O. A. LOCHRANE, plaintiff in error, *vs.* WM. SOLOMON, defendant in error.

L., who owed S. $1,000, for which S. held L.'s note and mortgage on a printing press, sold the press to C. for $5,000, and C. agreed to pay the $1,000 to S. and satisfy the note and mortgage, but S. refused to release L. and take C. for the debt.   There was evidence before the jury, however, that S. agreed to take C. as collateral, and afterwards agreed to give C. time on the $1,000, which he was to pay for L., if he would pay him two and a half *per cent.* per month for the indulgence, which he did for three or four months:

1. *Held,* That it was error in the Court, in his charge to the jury, to restrict them to the single inquiry whether C. was substituted as the debtor in place of L.

2. If C. agreed to pay the debt of L. to S. in a short time, and S. having accepted the liability of C. as collateral, *afterwards* for a valuable consideration, extended the time of payment for three or four months, as he had the right to do at his own risk, L. could not sue C. during that time, and S. was liable to L. for any damage sustained by L. on account of such indulgence given by S. to C.

Lochrane *vs.* Solomon.

Motion for new trial.   Decided by Judge COLE.   Bibb Superior Court.   November Term, 1867.

Solomon brought complaint on a promissory note against Lochrane.   The plea was the general issue.   On the trial, Solomon read in evidence his note, and closed.   It was made in Atlanta, 6th of October, 1858, by Lochrane to Solomon, or bearer, for $1,000 00, payable sixty days after its date, at the agency of The Georgia Railroad Bank, in said city.

The defendant read in evidence the answers of R. A. Crawford to interrogatories, stating substantially as follows:  In 1860, he, as trustee, bought of Solomon "The Empire State" news-paper office at Griffin, Georgia, subject to a mortgage for $1,000 00 in favor of Solomon.   It was part of the contract of purchase that he should pay the mortgage, and he believed Solomon so understood it.   He agreed with Solomon to continue the mortgage, and paid him interest thereon at the rate of two and a half *per cent.* per month for three or four months.   He had a conversation with Solomon at the time of Solomon's granting him indulgence on the mortgage. Solomon said Lochrane wished the matter closed, and had instructed him to close the mortgage.   The office was destroyed by fire three or four months after said conversation.   It was worth $5,000 00 or more.   Solomon knew of his purchase from Lochrane soon after it was made, for Solomon soon came to arrange about the mortgage debt, and did arrange it by Crawford's agreeing to pay the two and a half *per cent.* per month.   The defendant here closed.

Thereupon, the attorney for Solomon, read the answers of Solomon to interrogatories.   His version of the matter was this:  Said note was for $1,000 00 loaned to Lochrane on the 6th of October, 1858, and was secured by a mortgage on the press, type and *paraphernalia* of a printing office in Griffin, known as "The Empire State office."   Lochrane neither ordered him to foreclose the mortgage before said fire, nor did he request him to do so.   Lochrane and Crawford had an interview with him in Atlanta for the purpose of trying to

change said note and mortgage and substitute said Crawford, with Alfred Iverson, of Columbus, Georgia, as endorser. Solomon refused to make any change in the obligation whatever, stating that he did not believe Crawford and Iverson were good. He did not recollect the precise date of this, but knew that it was about the time of said sale by Lochrane to Crawford. Crawford paid Solomon between $40 00 and $50 00 as interest, agreed on between Solomon and Lochrane, and no more was ever paid. Lochrane agreed to pay Solomon two and a half *per cent.* per month on said loan, and requested Solomon to release him and take Crawford in his stead as to said interest. · Solomon refused, saying it made no difference to him who paid it, so that he got it. After the fire, when Solomon would dun Lochrane on the notes, Lochrane would say that he should have foreclosed the mortgage, and Solomon would reply that he had no notice to do so.

The defendant also testified in his own behalf, as follows: He borrowed the $1000 00, and gave the mortgage as aforesaid; that his agreement as to the interest was to pay two and a half *per cent.* per month for the sixty days, which was deducted out of the face of the note. The terms of his sale of " The Empire State " office to Crawford included his agreement to pay said note; the only money in the trade was to go to Solomon for said note.

When Lochrane went to Atlanta and met Crawford, to close the trade and have the mortgage taken up, he found that Crawford, instead of having the money, had a note, with Alfred Iverson's endorsement. Solomon refused to take it and cancel the mortgage. Thereupon, Crawford stated that he would have the money in a short time from the sale of a slave in Talbotton, and Lochrane consented that the matter should stand *in statu quo*, and give Crawford time thus to get the money. Lochrane had no interest in asking Solomon to let Crawford pay the *per cent.* in Lochrane's place, and made no such request. Crawford bought subject to the mortgage, and agreed to take it up, and he, and not Lochrane, arranged with Solomon. But Lochrane being present, did not object to such indulgence to Crawford, but consented

to it; but the indulgence was to be only for the short time for the purpose aforesaid. Afterwards, Lochrane found out that Crawford had not yet paid the mortgage, and that Solomon had arranged with him to continue the mortgage debt at said monthly *per cent.* This arrangement was without Lochrane's consent, for Solomon knew that Lochrane wished the debt paid. Lochrane then went to Atlanta, and notified Solomon that he must foreclose the mortgage, that he would not consent for the matter to stand longer; this notice, as he recollected, was given time enough for the collection before the fire.

What the Court charged does not appear, except as stated in the motion for a new trial. The verdict was for Solomon. Thereupon, Lochrane moved for a new trial upon the grounds that the verdict was contrary to the evidence, and that the Court erred in charging the jury, that unless they believed, from the evidence, that the plaintiff had assented to the agreement made between Lochrane and Crawford, and had agreed to substitute Crawford for Lochrane, as his payee, then the notice given by Lochrane to foreclose his mortgage availed him nothing, and the jury should find for the plaintiff. The Court refused a new trial, and this is assigned as error.

COBB & JACKSON, R. CLARK and R. F. LYON, for plaintiff in error.

W. POE for defendant in error.

BROWN, C. J.

1. The charge of the Court, in this case, confined the jury to the single inquiry whether Crawford was substituted for Lochrane as the debtor of Solomon. We think this was error. There was positive evidence that Solomon agreed to take Crawford's liability as collateral security; and it was the duty of the Court to have permitted the jury to consider that evidence, in connection with the evidence in reference to the substitution; and to inquire whether Solomon so

used this collateral security as to work injury to Lochrane; and if so, what damage resulted, by such act of Solomon, to Lochrane.

2. *In* 23d *Ga. Reps.*, 181, it is ruled that the holder of collaterals is bound to due diligence, and if anything is lost by the want of it, he is to be the loser.

*In* 4th *Ga.*, 442, *and* 18th *Ga.*, 655, this Court held, that collaterals placed in the hands of a creditor are not the subject of garnishment. Apply these rules to this case, and what is the result? If, as the evidence of Crawford shewed, Solomon accepted his liability as collateral, for the payment of Lochrane's debt, no other creditor of Lochrane could have compelled Crawford, by process of garnishment, to pay the debt which he owed to Lochrane, and which Solomon had accepted as collateral, to any other creditor of Lochrane, till Solomon was paid. And Solomon, having given time to Crawford, in consideration of two and a half *per cent.* per month, and Crawford having paid him a valuable consideration for the indulgence, Lochrane could not have maintained an action against Crawford upon the liability which Solomon held as collateral, during the period for which Crawford had paid Solomon for indulgence. And it necessarily follows, under the ruling of this Court, in the case cited in 23d *Ga.*, that Solomon, who, instead of exercising due diligence to collect the money out of Crawford, gave him indulgence for a valuable consideration, is liable, if loss accrued to Lochrane by reason of such indulgence. We are aware that the evidence is in conflict, but as Crawford's testimony sustained this view of the case, the Court should not have withdrawn from the jury the consideration of this evidence, and of the question as to the damage sustained by Locrane on account of the extension of time of payment given by Solomon to Crawford.

If the mortgage had been foreclosed by Solomon, and levied upon the printing press in the hands of Crawford, without the indulgence for which Solomon received the two and a half *per cent.* per month, most probably the money would have been made out of the press before it was con-

sumed by fire; and the Court should have permitted the jury to consider whether Lochrane sustained damage by this delay.

It is insisted in argument, that the verdict should not be disturbed, because Lochrane did not ask the Court below to give this view in charge to the jury. The charge, as given, entirely excluded this branch of the case from the considera-tion of the jury. The charge was plain and positive, and Lochrane might well suppose the Court would refuse to give in charge a proposition in the teeth of the charge already ·given. If the charge, when applied to the evidence in the case, was erroneous, as we hold it was, the fact that Lochrane did not ask the Court to give a charge in contradiction of what he had already charged, can not be a sufficient reason why the error should not be corrected.

Judgment reversed.

McCAY, J., concurred, but wrote out no opinion.

WARNER, J., dissenting.

From the facts in this case, as exhibited by the record, Lochrane was the maker of the note sued on, the principal debtor to Solomon, the plaintiff, and not a *surety*. It was *his* debt, and he is bound, under the law, to pay it, unless he is discharged from such payment *by law*. On what ground does he seek to be discharged from the payment of *his own debt* to Solomon? Simply on the ground that he had bar-gained the property which he had mortgaged to Solomon, to secure the payment of the debt to Crawford, and had given Crawford time to raise the money to pay off the mortgage debt of $1,000 00. There is no evidence in the record that Solomon agreed to *substitute* Crawford as *his* debtor, for the $1,000 00, in the place and stead of Lochrane. All that can be said is, that Crawford paid Solomon two and a half per cent. a month not to foreclose ·his mortgage on *Lochrane's property*, in payment of *Lochrane's debt*. But it is said, that this payment by Crawford to Solomon of two and a half per cent. a month, for three or four months, not to foreclose his

mortgage on Lochrane's property, in payment of Lochrane's debt, was a *collateral.* Collateral to what? There is no evidence that Solomon agreed to accept Crawford, either collaterally or·otherwise, as *paymaster* for Lochrane's debt. Upon what *legal* principle, then, can Crawford, or Crawford's act, be said to be a *collateral* undertaking to pay Lochrane's debt to Solomon, without the consent of Solomon? Collateral security in contracts, is a *separate* obligation, which is attached to another contract, and is to guarantee its performance. By this term, is also meant the transfer of property, or of other contracts, to insure the performance of a *principal engagement.* 1st. Bouvier's Law Dictionary, 275. What *collateral* security did Solomon take from Crawford, to secure Lochrane's debt? What has become of *that collateral security,* if any such ever existed? How, or in what manner, has the owner of *that collateral security* been injured by the act of Solomon? The simple truth is, (taking the most favorable view of this case for the defendant,) that Crawford paid Solomon two and a half per cent. a month for three or four months not to *foreclose* his mortgage on *Lochrane's property,* and thereby collect the debt that Lochrane owed him. *That is all of it;* there is no *surety,* or *collateral,* or *collateral security* in the case, who has been *injured.* The *assumed collateral* is a mere man of *straw.* In my judgment, there was no error in the Court below in overruling the motion for a new trial, on the ground that the verdict was contrary to the evidence. The Court was not requested, in writing, to charge the jury upon any part of the evidence, and there is no exception taken, that the charge of the Judge did not cover *all the facts proved.* The charge of the Court excepted to, was not error, in view of the facts contained in the record. The defendant was the *principal debtor,* and not a *surety,* or *collateral surety,* and has lost no *collateral security.* The loss of which he complains, (the destruction of the printing-press by fire,) did not spring out of, or result from, any agreement made between Crawford and Solomon, which would operate as a *legal* discharge of the debt, but from a cause entirely independent of that alleged agreement. From the facts dis-

closed by the record, and my understanding of the law applicable thereto, I am of the opinion the judgment of the Court below should be affirmed.